### BRADLEY v. ANDRUS.

(Circuit Court of Appeals, Third Circuit.    March 28, 1901.)

#### No. 30.

INDORSEMENT OF CHECK—BONA FIDE PURCHASER—PRESENTMENT—UNREASONABLE DELAY—DRAWER'S LIABILITY.

Several weeks after a check was drawn and indorsed by the payee to an innocent purchaser for value, the drawer, in reliance on the payee's fraudulent representation that he had lost or mislaid it, and on his agreement to return it, overpaid the latter the full amount thereof on a settlement between them, though he would not have done so if the holder had promptly presented the check for payment. *Held*, that he was liable thereon notwithstanding the holder's unreasonable delay, as the overpayment was due proximately to his imprudent reliance on the payee.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Andrew J. Maloney, for plaintiff in error.

Henry P. Brown, for defendant in error.

Before GRAY, Circuit Judge, and BRADFORD and J. B. McPHERSON, District Judges.

BRADFORD, District Judge.    John E. Andrus, the defendant in error, brought an action of assumpsit in the court below against Thomas Bradley, the plaintiff in error, on a check dated February

18, 1897, drawn by Bradley on the Security Trust Company of Philadelphia to the order of Francis C. Grable for $12,500 and by Grable and Andrus indorsed in blank. The defendant having pleaded non assumpsit, payment and set-off, and given notice of special matter of defense, the case went to trial before a jury. At the close of the testimony the counsel for the respective parties stipulated in open court as follows:

"It is agreed by counsel in open court that a verdict shall be taken for the plaintiff for the sum of $14,845.81, it being understood and agreed between them that the case shall be placed upon the proper list for argument upon the question reserved as to whether the defence which has been set up and shown by evidence is a valid defence. If the court shall be of opinion that it is a valid defence, judgment to be entered for defendant notwithstanding the verdict. Otherwise judgment for plaintiff upon the verdict as rendered. The verdict is to be taken with interest from ———, amounting to ———, subject to the power of the court upon the argument hereafter to take place, to reduce the verdict by the amount of interest so included, if in the judgment of the court the interest should not have been made a part of the verdict."

Pursuant to this agreement and by direction of the court the jury returned a verdict for the plaintiff in the sum of $14,845.81; whereupon the defendant moved for a new trial and also for judgment non obstante veredicto. Both motions were denied, but the court corrected an improper inclusion of interest in the verdict by reducing the latter to $14,139.56, for which amount judgment was rendered. (C. C.) 102 Fed. 54. The plaintiff in error relies on the third assignment, which is "that the learned judge erred in denying defendant's motion for judgment non obstante veredicto." The purpose of the above stipulation of counsel was to submit the evidence as well as the law in the case to the decision of the court. The learned circuit judge accordingly found the facts as follows:

"The defendant, Thomas Bradley, on February 18, 1897, gave to one Francis C. Grable a check for $12,500 on the Security Trust Company of Philadelphia. Two or three weeks afterwards, when the bank book of Bradley was settled, he found that the check had not been presented for payment. He thereupon made inquiry of Grable, and was told by him that it was still in his possession, and that he would return it. On April 15, 1897, Bradley and Grable had a general settlement, and it then appeared that Bradley owed Grable $19,416.67. In this last mentioned amount, however, there was included the sum of $12,500 for which Bradley's check of February 18, 1897, had been given. At this settlement Bradley was told by Grable that he had lost or mislaid that check and that he would look for it, and if found return it. In addition to this oral assurance Grable gave to Bradley a statement in writing as follows:

"'Philadelphia, April 15, 1897.

"'I have in my possession check No. 1553, drawn on the Security Trust and Life Insurance Company, dated February 18, 1897, for twelve thousand five hundred dollars, drawn to my order and signed by Thomas Bradley, which I am to return to Mr. Bradley as settlement has been made, and it will not be presented for payment.    Francis C. Grable.

"'Witness: E. I. P. Grubb.'

"Relying on this statement Bradley paid Grable the full amount of $19,-416.67, instead of only $6,916.67, which latter was the true amount due by Bradley to Grable, and the only amount which would have been paid if it had been known by Bradley that his check of February 18, 1897, was then outstanding, as presently to be stated. Subsequently, on October 20, 1897, Bradley gave notice to the Security Trust Company not to pay the check,

and when it was thereafter presented, as will presently be mentioned, the Trust Company, in obedience to that notice, refused payment, and the check was protested. The statements made by Grable to Bradley were false and fraudulent. The fact is that Grable had passed the check to John E. Andrus, the plaintiff in this case, upon the day after he (Grable) had obtained it from Bradley. Andrus had no knowledge of any fraud or contemplated fraud on the part of Grable, but took the check innocently and gave cash for it to the amount of its full face value. At Grable's request, Andrus held the 'check instead of presenting it, but subsequently passed it to one William J. Arkell for certain stocks or bonds. And Arkell, in January, 1898, presented it for payment, which, as has been stated, was refused. Arkell thereupon brought suit upon it, but that suit was discontinued, the check was returned to Andrus, and this present action instituted."

No assignment of error questions the authority of the court below to find the facts pursuant to the above stipulation of counsel or the regularity of such procedure, nor has any such question been suggested by counsel on either side. We must, therefore, give to the finding by the court below conclusive effect in this court as to the facts so found. That finding expressly negatives fraud on the part of Andrus, the learned judge saying: "Andrus had no knowledge of any fraud or contemplated fraud on the part of Grable, but took the check innocently and gave cash for it to the amount of its full face value." Andrus in holding the check from February 19, 1897, until the latter part of January, 1898, without presenting it for payment, certainly was not diligent in the assertion of his rights. He omitted seeking payment for an unreasonable time. But mere delay for eleven months, though unreasonable, in presenting the check for payment at the bank on which it was drawn, could not of itself defeat in whole or in part the right of Andrus, as its bona fide holder, to recover from the drawer, unless funds of the latter applicable to the check were in the interim lost through the insolvency or failure of the bank. It is admitted, however, that the bank was solvent during all that period, and thereafter continued so, and, further, that the check when presented would have been promptly paid by the bank had it not been for the notice given by Bradley to the bank October 20, 1897, not to pay it. If Bradley has any defence to the action it must rest on some other ground than the mere omission by Andrus to present the check for payment within a reasonable time after he received it. Undoubtedly, if Andrus on receiving the check had promptly presented it at bank, Bradley would not have paid its amount to Grable in the settlement of April 15, 1897. But while the delay on the part of Andrus to present the check prior to such settlement was the condition, it was not the proximate cause, of such over-payment by Bradley to Grable. Bradley was induced to make such payment, not by the fact that the check had not been presented, but through his imprudent reliance on the false and fraudulent representation made to him by Grable that the check, though mislaid, was still in his possession and that he would return it. He could have insisted on full indemnity from Grable before including the amount of the check in the settlement or have refused, in the absence of the check, to pay its amount. Had he secured such indemnity he would have been saved from the loss with which he is now visited. Or had he refused to pay, any judgment which might have been recovered

against him for the amount of the check would have been within the control of the court rendering it, and execution could have been restrained until proper indemnity was given against any claim by a bona fide holder for value. But he did not demand indemnity nor exercise any reasonable precaution. He wholly relied on the word of Grable, and in making payment to him of the amount of the check he must be held to have assumed the risk of his falsity. Bradley cannot successfully invoke the doctrine of estoppel. It is an elementary principle of the law of estoppel that he who claims the benfit of an equitable estoppel or estoppel in pais on the ground that he has been misled through the acts, conduct or representations of another, must not have been misled through his own want of reasonable care and circumspection. Had Bradley observed the caution to be expected from an ordinarily prudent man in similar circumstances he would have required something more than the mere assurance of Grable before paying to him the amount of the check. Even if the other essential elements of an estoppel in pais were present the lack of reasonable care on the part of Bradley would negative the existence of an estoppel. We think that the doctrine of estoppel is wholly inapplicable to the case. Andrus might have suffered loss by failure of the bank before presentation of the check, but he did not owe any legal duty to Bradley to present it. Bradley through his improvidence made the over-payment, and while great hardship has resulted to him from the fraud of Grable in connection with his own want of circumspection, yet as between Andrus and Bradley the latter must be treated as the author of his own misfortune. We perceive no ground on which the motion for judgment non obstante veredicto could have been granted.

The judgment below is affirmed.